| | |
|---|---|
| MARIANA AVALOS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **ORDER** |
| KILOLO KIJAKAZI, Acting ) | |
| Commissioner of Social Security ) | |
| Administration,[1] ) | |
| Defendant. ) | |

This matter is before the court on the parties' cross motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Mariana Avalos ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the denial of her application for a period of disability and disability insurance benefits ("DIB"). The time for filing responsive briefs has expired, and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, the court grants Plaintiff's Motion for Judgment on the Pleadings [DE #20], denies Defendant's Motion for Judgment on the Pleadings [DE #22], and remands the case

---

[1] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration and is substituted as the defendant pursuant to Fed. R. Civ. P. 25(d).

to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings.

## STATEMENT OF THE CASE

Plaintiff applied for DIB[2] on October 17, 2016, with an alleged onset date of September 25, 2014. (R. 10, 216–22.) The application was denied initially and upon reconsideration, and a request for hearing was filed. (R. 10, 103, 117, 129–30.) A hearing was held on January 10, 2019, before Administrative Law Judge ("ALJ") Anne-Marie A. Ofori-Acquaah, who issued an unfavorable ruling on March 20, 2019. (R. 7–28, 38–77.) On February 7, 2020, the Appeals Council denied Plaintiff's request for review. (R. 1–6.) At that time, the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. § 404.981. On April 9, 2020, Plaintiff filed the instant civil action, seeking judicial review of the final administrative decision pursuant to 42 U.S.C. § 405.

## DISCUSSION

### I. Standard of Review

The scope of judicial review of a final agency decision denying disability benefits is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517

---

[2] Plaintiff's complaint also identifies a claim for supplemental security income ("SSI") benefits under Title XVI of the Social Security Act. There is evidence in the record of an earlier application for SSI. (R. 93.) The ALJ's decision and the parties' briefs only address the DIB claim.

2

(4th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; [i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (citations omitted) (alteration in original). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589) (first and second alterations in original). Rather, in conducting the "substantial evidence" inquiry, the court determines whether the Commissioner has considered all relevant evidence and sufficiently explained the weight accorded to the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## II. Disability Determination

In making a disability determination, the Commissioner utilizes a five-step evaluation process. The Commissioner asks, sequentially, whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1; (4) can perform the requirements of past work; and, if not, (5) based on the claimant's age, work experience, and residual functional capacity can adjust to other work that exists in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520(a)(4); *Albright v. Comm'r of SSA*, 174 F.3d 473,

475 n.2 (4th Cir. 1999). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th. Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. *Id.* In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's residual functional capacity] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981). "If the Commissioner meets [this] burden, the ALJ finds the claimant not disabled and denies the application for benefits." *Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015).

### III.  ALJ's Findings

Applying the five-step, sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Social Security Act ("the Act"). As a preliminary matter, the ALJ found Plaintiff met the insured status requirements of the Act through December 31, 2018. (R. 12.) At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity from her alleged onset date of September 25, 2014, through her date last insured, December 31, 2018. (*Id.*) Next, the ALJ determined Plaintiff had the severe impairments of knee osteoarthritis, obesity, depression, and post-traumatic stress disorder. (R. 13)

At step three, the ALJ concluded Plaintiff's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the

4

listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1, through the date last insured. (R. 13.) The ALJ expressly considered Listings 1.02,[3] 12.04, 12.06, 12.15, and 14.09. (*Id.*)

Before proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC") and found that Plaintiff had, through the date last insured,

> the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she can occasionally climb ramps and stairs and can never climb ladders, ropes or scaffolds; she can occasionally balance, kneel, crouch and crawl; she can never be exposed to unprotected heights; she can perform simple[,] routine and repetitive tasks, but not at a production rate pace; she can make simple work-related decisions; she can have occasional interaction with supervisors, coworkers and the public. In addition to normal breaks, she will be off task up to 10 percent in an 8-hour workday.

(R. 15.) In making this assessment, the ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of Plaintiff's symptoms "not entirely consistent with the medical evidence and other evidence in the record." (R. 16.) At step four, the ALJ concluded that Plaintiff was unable to perform any past relevant work through the date last insured. (R. 20.) Nonetheless, at step five, upon considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that, through the date last insured, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed, namely: nut sorter (DOT #521.687-086), cuff folder (DOT #685.687-014), and dowel inspector (DOT #669.687-014). (R. 21.) The ALJ concluded that Plaintiff had not been disabled

---

[3] The parties do not dispute that Listing 1.02A is the relevant listing in this case. Listing 1.02B applies to impairment related to an upper extremity.

5

under the Act since September 25, 2014, Plaintiff's alleged onset date, through December 31, 2018, the date last insured. (*Id.*)

## IV. Plaintiff's Arguments

Plaintiff contends the Commissioner erred by:

(A) failing to conduct a proper function-by-function assessment of Plaintiff's work-related abilities and requiring objective proof of Plaintiff's pain (Pl.'s Mem. Supp. Mot. J. Pldgs. [DE #21] at 10–14);

(B) failing to properly analyze whether Plaintiff met Listing 1.02A, in violation of *Radford v. Colvin*, 734 F.3d 288 (4th Cir. 2013) (*id.* at 15–17);

(C) failing to account for the limiting effects of Plaintiff's medications in the RFC, in violation of 20 C.F.R. § 404.1529(c) (*id.* at 18); and

(D) failing to identify and resolve an apparent conflict at step five between the testimony of the Vocational Expert ("VE") and the Dictionary of Occupational Titles ("DOT") (*id.* at 19–21).

The court will first address Plaintiff's Listing 1.02A argument, and then briefly address the remaining arguments. For the reasons explained below, remand to the Commissioner is necessary.

### A. Listing 1.02A

In determining whether a listing is met or equaled, an ALJ must consider all evidence in the case record about the claimant's impairments and the effects on the claimant. 20 C.F.R. § 404.1526(c). Where a claimant has a severe impairment and the record contains evidence that symptoms related to the impairment "correspond to some or all of the requirements of a listing," it is incumbent upon the ALJ to identify the listing and to compare the claimant's symptoms to each of the listing's requirements. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). An ALJ's

6

failure to compare a claimant's symptoms to the relevant listings or to explain, other than in a summary or conclusory fashion, why the claimant's impairments do not meet or equal a listing "makes it impossible for a reviewing court to evaluate whether substantial evidence supports the ALJ's findings." *Radford*, 734 F.3d at 295; *see also Cook*, 783 F.2d at 1173.

Listing 1.02A is met when a claimant has a major dysfunction of a joint "[c]haracterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medially acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s)" that results in an "inability to ambulate effectively, as defined in 1.00B2b." 20 C.F.R. Pt. 404, Subpart. P, App. 1, § 1.02A. Section 1.00B2b explains what ineffective ambulation means within the context of this listing. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00B2b.

Here, ALJ Ofori-Acquaah's entire analysis of Listing 1.02A is the statement that "[t]he record does not show that [Plaintiff] has major dysfunction of any joint, or signs of inflammation or deformity in two or more joints, resulting in an inability to ambulate effectively . . . as required by listing[] 1.02." (R. 13.) This is the type of listings analysis deemed insufficient to permit meaningful review in *Cook*, 783 F.2d at 1173, and *Radford*, 734 F.3d at 295. Here, this is problematic because the evidence "is not so one-sided that one could clearly decide, without analysis, that Listing [1.02A] is not implicated." *Brown v. Colvin*, 639 F. App'x 921, 923 (4th Cir. 2016) (per

curiam) (unpublished) (applying *Radford* and declining the parties' "invitations to review the medical record de novo to discover facts to support or refute the ALJ's finding at Step Three"). As Plaintiff notes, there is evidence to suggest she meets the listing. (Pl.'s Mem. Supp. Mot. J. Pldgs. at 15–17 (first citing R. 388, 542, 545, 551, 626, 671, 691 (evidence relevant to anatomical deformity, chronic pain and stiffness with abnormal motion, and medical imaging criteria); then citing R. 67–69, 285–86, 424, 657–58 (evidence relevant to ineffective ambulation)).) Furthermore, the ALJ identified knee osteoarthritis as a severe impairment, cursorily mentioned Listing 1.02A at step three, and found Plaintiff had the RFC to perform a reduced range of sedentary work,[4] which in conjunction strongly suggest that a thorough analysis of Listing 1.02A was necessary. The Commissioner's argument on review (Def.'s Mem. Supp. Mot. J. Pldgs. [DE #23] at 9–12) is the type of invitation rejected in *Brown*, 639 F. App'x at 923, and is not a substitute for the analysis the ALJ should have done in the first instance. Accordingly, remand is required. *See Cook*, 783 F.2d at 1173; *Radford*, 734 F.3d at 295.

### B. Remaining Arguments – Functional Assessment, Medication Side Effects, and VE/DOT Conflict

While the improper listing analysis alone requires remand, there are other problems with the ALJ's decision that should be avoided on remand, if the Commissioner determines Plaintiff does not meet a listing. First, the ALJ's decision

---

[4] "An RFC for less than a full range of sedentary work reflects very serious limitations resulting from an individual's medical impairment(s) and is expected to be relatively rare." SSR 96–9p, 1996 WL 374185, at *1 (July 2, 1996).

does not contain the function-by-function assessment of Plaintiff's work-related abilities that the Fourth Circuit recently re-emphasized is a "necessary prerequisite to the RFC finding" and which must be based on the correct regulatory framework. *See Dowling v. Comm'r of SSA*, 986 F.3d 377, 387–88 (4th Cir. 2021). The importance of this assessment is heightened in cases such as this where the ALJ assesses an RFC of a reduced range of sedentary work. Second, despite noting Plaintiff's statements about the side effects of her medications (R. 15–17), it is unclear how the ALJ evaluated these statements, which, as Plaintiff notes (Pl.'s Mem. Supp. Mot. J. Pldgs. at 18–19), were relevant to her work-related abilities. *See* 20 C.F.R. § 404.1529(c)(3)(iv) ("type, dosage, effectiveness, and side effects" of medication may be considered when evaluating a claimant's symptoms). While the Commissioner notes evidence in the record that runs counter to Plaintiff's statements (Def.'s Mem. Supp. Mot. J. Pldgs. at 13), there exists a material ambiguity in the evidence the ALJ needed to address. *See* SSR 96–8p, 1996 WL 374184, at *7 (July 2, 1996) (ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved"). Lastly, whether there is an apparent conflict between the jobs identified by the ALJ at step five to the extent they require "production" work, or whether this is just a "semantics error" as the Commissioner contends (Def.'s Mem. Supp. Mot. J. Pldgs. at 16), the issue should be squarely addressed by the ALJ on remand if the matter proceeds to step five. *See Thomas v.*

*Berryhill*, 916 F.3d 307, 312 (4th Cir. 2019) (noting lack of explanation as meaning of "production rate" in RFC).

## CONCLUSION

For the reasons stated above, Plaintiff's Motion for Judgment on the Pleadings [DE #20] is GRANTED, Defendant's Motion for Judgment on the Pleadings [DE #22] is DENIED, and the case is REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this order.

This 18th day of August 2021.

_____
KIMBERLY A. SWANK
United States Magistrate Judge